UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHERRY COPPET, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 14-0330 (ABJ) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Sherry Coppet brings this action against defendant the District of Columbia ("the District"), alleging that it violated 42 U.S.C. § 1983 and plaintiff's Fifth Amendment right to procedural due process when it demoted her. Compl. [Dkt. # 1] ¶¶ 28–30. Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that plaintiff has failed to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss [Dkt. # 4] at 1 ("Def.'s Mot."). Applying *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Court finds that plaintiff has failed to plead sufficient facts to establish that the District can be held liable for the injury she alleges, and so the Court will grant defendant's motion to dismiss.

**BACKGROUND**

The following facts are taken from plaintiff's complaint and are assumed to be true for the purposes of this motion. Plaintiff was employed as Branch Chief of the District of Columbia Superior Court, Family Court Operations Division, Paternity and Child Support Branch, from December 1990 until she was terminated on October 25, 2012. Compl. ¶¶ 6–7. In April 2011,

an employee under plaintiff's supervision filed a "false complaint," claiming that plaintiff had discriminated against her based on her disability, and had harassed and bullied her. *Id.* ¶ 8. As a result of the employee's complaint, in September 2011, plaintiff was reassigned to the position of Fathering Court Coordinator within the same division. *Id.* ¶ 9.

On August 27, 2012, the Director of Family Court Operations, Dianne King, issued plaintiff a Notice of Intent to Recommend Suspension and Relief of Management Responsibilities ("Notice of Intent") based on the investigation of the employee's discrimination complaint. *Id.* ¶ 10. Plaintiff alleges "[u]pon information and belief" that "Ms. King consulted with and was instructed to take disciplinary action against Plaintiff by Duane Delaney, Clerk of the Court[,] and Anne Wicks, Executive Officer." *Id.* ¶ 11.

Plaintiff responded in writing to the Notice of Intent on September 18, 2012. *Id.* ¶ 12. On October 4, 2012, Clerk of the Court Delaney issued plaintiff a notice of proposed termination pursuant to Personnel Policy 1005. *Id.* ¶ 13. Plaintiff responded in writing to that notice on October 19, 2012, and received Delaney's final decision terminating her employment on October 24, 2012. *Id.* ¶¶ 14–15. The termination was effective as of the close of business the next day. *Id.* ¶ 15.

Plaintiff appealed the termination decision to Executive Officer Wicks and requested a hearing. *Id.* ¶ 16. Hearing officer Lois Hochhauser presided over the hearing, which took place on January 23 and 24, 2013, and at which plaintiff was able to present "documentary and testimonial evidence." *Id.* ¶ 17. On June 24, 2013, Hochhauser issued a Report and Recommendation, finding that plaintiff's employer had not met its burden of proof to demonstrate that plaintiff had engaged in misconduct, and recommending that plaintiff be reinstated to her position as Branch Chief. *Id.* ¶ 19. Pursuant to Personnel Policy 1007, hearing

officer Hochhauser's opinion constituted a nonbinding recommendation to the final decision-maker, Executive Officer Wicks.  *Id.* ¶ 18.

On July 16, 2013, Wicks issued her final decision.  *Id.* ¶ 20.  Wicks determined that plaintiff should be reinstated, but to a non-supervisory position.  *Id.*  On September 9, 2013, plaintiff returned to work as a Quality Review Specialist in the Civil Division, a demotion of two pay grades from the Branch Chief position that decreased plaintiff's salary by $19,000.  *Id.* ¶ 22.

Plaintiff contends that she was a career service employee with a property interest in her job who could only be terminated for cause after notice and an opportunity to respond.  *Id.* ¶¶ 24–25.  She further claims that the "post-termination procedures violated [her] due process right to an impartial and unbiased hearing before a neutral decision maker," *id.* ¶ 26, because Executive Officer Wicks was both involved in the initial decision to terminate plaintiff, and was the final decision-maker in her case.  *Id.*

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 566. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

The Court will grant the District's motion to dismiss because plaintiff has not alleged sufficient facts to establish municipal liability under *Monell*. Plaintiff asserts that the District deprived her of procedural due process at her post-termination hearing in violation of 42 U.S.C.

§ 1983[1] because the final decision-maker, Executive Officer Wicks, was biased by her alleged involvement in the preliminary decision to terminate plaintiff. Compl. ¶¶ 29–30. Defendant moved to dismiss the complaint on the grounds that plaintiff has not pled any facts that would support a claim for municipal liability under *Monell*. Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss [Dkt. # 4] at 5. Defendant also contends that plaintiff has failed to plead sufficient facts to state a claim for the deprivation of her right to due process. *Id.* at 6.

In *Monell*, the Supreme Court held that local governments are not immune from liability under section 1983, but explained that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Rather, "it is when execution of a government's policy or custom . . . inflicts the injury" that a municipality can be held liable under section 1983. *Id.* at 694. The Supreme Court later noted that "while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Thus, "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of

---

1   Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

*employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.*

The D.C. Circuit has further explained that:

> There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom"; or the failure of the government to respond to a need . . . in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).

Plaintiff argues that District of Columbia Personnel Policy 1007 deprived her of her Fifth Amendment right to procedural due process because, pursuant to that policy, the decision of the neutral hearing officer, Hochhauser, was not binding on the "actual decision maker," Wicks. Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. [Dkt. # 7] at 4 ("Pl.'s Opp."). Plaintiff does not contend that Wicks was a "policy maker within the government," nor does she allege that a policy maker adopted a "custom" of violations by subordinates, or that the District has a practice of "deliberate indifference" that deprived her of her rights. *See Baker*, 326 F.3d at 1306. So plaintiff seems to claim only that Personnel Policy 1007 constitutes an "explicit . . . policy [of] the government that violates the Constitution." *See id.* But plaintiff has not pled sufficient facts to show that the policy actually "inflict[ed] the injury" she alleges, *Monell*, 436 U.S. at 694, and therefore the complaint must be dismissed.

As a preliminary matter, although defendant appears to concede that plaintiff possessed a protected property interest in her employment, *see* Def.'s Reply to Pl.'s Opp. [Dkt. # 8] at 3, it is not clear that plaintiff has stated a claim for the denial of her right to due process. The due

process claim hinges solely on the allegation that Wicks was biased by her participation in the initial decision to terminate plaintiff.  *See* Compl. ¶ 30.  But plaintiff has alleged no facts beyond her own "information and belief" to indicate that Wicks was actually involved with that decision.  *See id*. ¶ 11.  And plaintiff does not otherwise challenge the post-termination proceedings, nor does she contend that she did not receive "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story," as required by the Constitution.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  So, at the outset, the due process claim hangs by a thread.

But the Court need not determine whether plaintiff has stated a due process claim because even if Wicks was improperly involved in both the preliminary and final decisions, plaintiff has not alleged that it was a "policy or custom" of the District to allow a final decision-maker to be part of an initial disciplinary decision.  *See Monell*, 436 U.S. at 694.  In fact, in her opposition, plaintiff expressly states that the District's policy is fair:  "On paper," she asserts, "[the District's] policies provided for due process before a neutral decision maker."  Pl.'s Opp. at 2.  The opposition makes it clear that plaintiff's true grievance is not with a policy or custom of the District, but rather with the specific decision that Wicks made.  *See id.* at 3 ("The crux of the Complaint is that, 'The post-termination procedures violated Plaintiff's due process right . . . ' because Defendant overruled Ms. Hochhauser's decision that Plaintiff should be reinstated to her former job."), quoting Compl. ¶ 26; *see also id.* at 2 ("In practice, Defendant disregarded the neutral decision maker's ruling when it disagreed with her findings.").

Given that plaintiff does not contend that Wicks is a "policy maker" within the meaning of *Baker*, 326 F.3d at 1306, the Court finds that plaintiff has failed to allege any facts that show that the District "is actually responsible" for Wicks's determination.  *Pembaur*, 475 U.S. at 479.

Moreover, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691, and so even if all of the factual allegations of the complaint are true, the District is not liable for the actions of its employee, Wicks. Therefore, the Court will grant the District's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has failed to state a claim upon which relief can be granted, and so it will grant defendant's motion to dismiss. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: December 2, 2014